# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT NEW JERSEY

STATE OF NEW JERSEY, OFFICE OF THE ATTORNEY GENERAL,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and UNITED STATES DEPARTMENT OF JUSTICE,

    Defendants.

Civil Action No.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### I. NATURE OF ACTION

1. On August 11, 2020, the State of New Jersey, Office of the Attorney General ("Plaintiff") submitted two Freedom of Information Act ("FOIA") requests, one to the U.S. Department of Housing and Urban Development ("HUD") and one to the U.S. Department of Justice ("DOJ") (together, "Defendants"), requesting the disclosure of information providing the factual basis, if any, for repeated statements by President Donald Trump linking affordable housing to increased crime rates.

2. The President made these statements on Twitter in connection with a rule announced by HUD on July 23, 2020, titled *Preserving Community and Neighborhood Choice*, 85 Fed. Reg. 47,899 (Aug. 7, 2020). That rule repealed a 2015 rule, titled *Affirmatively Furthering Fair Housing*, 80 Fed. Reg. 42,271 (July 16, 2015), which had implemented the requirement under the federal Fair Housing Act ("FHA") that HUD programs and activities be administered "in a manner affirmatively to further the purposes" of the FHA, 42 U.S.C. § 3608(e)(5).

3. The President has repeated similar remarks on Twitter and in other settings on numerous occasions—but neither the President nor DOJ nor HUD has provided the public with any data to back these claims, which are not consistent with New Jersey's own experience with affordable housing.

4. As of the date of the filing of this Complaint, Defendants have not produced any records in response to Plaintiff's FOIA requests. Nor have Defendants identified any ground for withholding responsive material as exempt from production under FOIA. Defendants have violated FOIA by failing to respond to Plaintiff's requests within the statutorily prescribed time limit, failing to disclose the requested records, and unlawfully withholding the requested information, to the extent such records in fact exist.

5. Plaintiff brings this action against Defendants to compel compliance with FOIA, 5 U.S.C. § 552. Plaintiff seeks an injunction directing Defendants to adhere to FOIA and search for and produce all responsive, non-exempt records.

## II. JURISDICTION AND VENUE

6. This court has subject-matter jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

7. This court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C § 2201 *et seq*.

8. Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## III. PARTIES

9. Plaintiff State of New Jersey, Office of the Attorney General is represented by its Attorney General, Gurbir S. Grewal, with a principal place of operation at 25 Market St., Trenton, NJ 08625.

10. Defendant U.S. Department of Housing and Urban Development is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and is headquartered at 451 Seventh Street, S.W., Washington, D.C. 20410. HUD has possession, custody, and control of records to which Plaintiff seeks access.

11. Defendant U.S. Department of Justice is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and is headquartered at 950 Pennsylvania

Avenue, N.W., Washington, D.C. 20530-0001. DOJ has possession, custody, and control of records to which Plaintiff seeks access.

## IV.   STATUTORY FRAMEWORK

12. FOIA provides every person with a right to request and receive federal agency records. *See* 5 U.S.C. § 552(a)(3)(A).

13. In an effort to encourage open government, FOIA imposes strict deadlines on agencies to provide responsive records to FOIA requests. *See id.* § 552(a)(6)(A).

14. An agency must comply with a FOIA request by, among other things, issuing a determination within 20 business days after receipt of the request. *Id.* § 552(a)(6)(A)(i).

15. The determination "must at least inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 186 (D.C. Cir. 2013).

16. An agency may be entitled to one ten-day extension of time to respond to a request if it provides written notice to the requester explaining that "unusual circumstances" exist that warrant additional time. 5 U.S.C. § 552(a)(6)(B).

17. An agency must immediately notify the requester of its determination whether to comply with a request, and the reasons for it, and of the right of such person to appeal an adverse determination. *Id.* § 552(a)(6)(A)(i).

18. An agency's failure to comply with timing requirements is constructive denial and satisfies the requester's requirement to exhaust administrative remedies. *Id.* § 552(a)(6)(C)(i).

19. A FOIA requester who exhausts administrative remedies may petition the court for injunctive and declaratory relief from the agency's continued withholding of public records. *See id.* § 552(a)(4)(B).

## V. FACTUAL ALLEGATIONS

20. On July 23, 2020, without providing notice or an opportunity to comment, HUD announced that it was issuing a new rule titled *Preserving Community and Neighborhood Choice*, 85 Fed. Reg. 47,899 (Aug. 7, 2020) ("2020 rule"). The 2020 rule repealed a rule that HUD had previously adopted, titled *Affirmatively Furthering Fair Housing*, 80 Fed. Reg. 42,271 (July 16, 2015) ("2015 AFFH rule"), which implemented the FHA's mandate that HUD grantees must administer programs and activities "in a manner affirmatively to further the purposes" of the FHA, 42 U.S.C. § 3608(e)(5). The 2015 AFFH rule, among other things, established an Assessment of Fair Housing process and required that HUD grantees use that process and an associated data tool in order to analyze the causes

of continuing disparities in access to housing and assess possible long-term solutions to such disparities, including, but not limited to, the construction of new affordable housing units. *See* 80 Fed. Reg. at 42,279.

21. Despite the absence of any intervening change in law or relevant facts, the 2020 rule abruptly reversed the 2015 AFFH rule, eliminating the requirement that HUD grantees use the Assessment of Fair Housing process and associated data tool, and adopting a much narrower understanding of the FHA's requirement to affirmatively further fair housing. The 2020 rule requires only a certification by grantees that they took affirmative steps to further fair housing policy during the relevant period based on a much more limited analysis of impediments to housing access, even though HUD had specifically determined in its 2015 rule that the use of such a certification was not effective in furthering the statutory mandate. *See* 80 Fed. Reg. at 42,272. The new rule became effective on September 8, 2020.

22. Following HUD's announcement, on July 29, 2020, President Trump issued two consecutive tweets stating, "I am happy to inform all of the people living their Suburban Lifestyle Dream that you will no longer be bothered or financially hurt by having low income housing built in your neighborhood. . . . Your housing prices will go up based on the market, and crime will go down. I have rescinded the Obama-Biden AFFH Rule. Enjoy!"

23. The President's statements were notably devoid of any reference to data to support his claims, and publicly available data tell a different story. *See, e.g.*, Len Albright et al., *Do Affordable Housing Projects Harm Suburban Communities? Crime, Property Values, and Taxes in Mount Laurel, NJ*, 12 City & Cmty. 89, 89 (2013) ("[T]he opening of [a] affordable housing development was not associated with trends in crime, property values, or taxes."); Rebecca Diamond & Tim McQuade, *Who Wants Affordable Housing in their Backyard? An Equilibrium Analysis of Low Income Property Development*, 127 J. Pol. Econ. 1063, 1065 (2019) (housing developments taking advantage of the Low Income Housing Tax Credit [LIHTC] cause "declines in both violent and property crime within low income areas" and "do[] not increase crime in high income areas"); Keri-Nicole Dillman et al., *The What, Where, and When of Place-Based Housing Policy's Neighborhood Effects*, 27 Hous. Pol'y Debate 282, 282 (2017) ("[p]roducing LIHTC housing in distressed neighborhoods positively impacts the surrounding neighborhood" in terms of "increased safety," and creating LIHTC housing in "higher opportunity neighborhoods" have "no impacts on crime"); *see also* Kristen Holmes, *Fact-check: In Repealing Obama-Era Rule, Trump Makes False Claims About Low-Income Housing, Crime and the Suburbs*, CNN, https://www.cnn.com/2020/08/03/politics/fact-check-trump-low-income-housing-suburbs-crime/index.html (last updated Aug. 3, 2020, 2:11 PM) ("There is no evidence or data to back up Trump's claim

that [the 2015 AFFH rule] affected home prices and crime rates before President Trump took office.").

24. The President has made similar statements more recently. For example, on October 13, 2020, he stated: "They want to . . . destroy your suburbs. . . . I'm about having you safe. I'm about having your suburban communities. I don't want to build low-income housing next to your house. . . . I ended the [2015 AFFH] regulation that brought crime to the suburbs and you're going to live the American Dream." Those statements have been similarly unsupported by any facts, and neither HUD nor DOJ has released information justifying the President's assertions, which appear to have informed HUD's rulemaking.

25. In order to understand the factual basis and reasoning for President Trump's statements, and HUD's 2020 rule, Plaintiff submitted substantively identical FOIA requests to HUD and DOJ on August 11, 2020. *See* Exhibits 1 & 2.

26. In each FOIA request, Plaintiff requested the following records:

a. Without date limitation, all research, studies, or data analyses that provided the factual basis for the President's July 2020 statements regarding the effects of the 2015 AFFH rule and/or affordable housing on crime rates;

b. From January 1, 2020 until the date on which the agency commences its search for responsive records, all e-mails, memoranda, briefings, or any other

8

written communications exchanged between the agency and the Executive Office of the President that relate to the 2015 AFFH rule; and

  c. From January 1, 2020 until the date on which the agency commences its search for responsive records, all e-mails, memoranda, briefings, or any other written communications exchanged between the agency and the Executive Office of the President concerning the impact of affordable housing on crime rates.

  27. In each FOIA request, Plaintiff sought a waiver of search and duplicating fees under 5 U.S.C. § 552(a)(4)(A)(iii), because disclosure is in the public interest, is likely to contribute significantly to public understanding of the operations or activities of the government, and is not primarily in the commercial interest of the requestor.

**FOIA Request to Defendant DOJ**

  28. On August 11, 2020, Defendant DOJ acknowledged receiving Plaintiff's FOIA request through its online portal and assigned a tracking number to the FOIA request. Therefore, DOJ's deadline to respond to Plaintiff's FOIA request was September 9, 2020. *See* Exhibit 3.

  29. On August 27, 2020, Plaintiff received a letter from the Initial Request Staff at DOJ's Office of Information Policy acknowledging receipt of Plaintiff's FOIA request on August 11, 2020, and stating that DOJ has determined that it

requires an extension of the time limit to respond to the request due to "unusual circumstances," pursuant to 5 U.S.C. § 552(a)(6)(B)(i)-(iii). *See* Exhibit 4.

30.  DOJ's letter does not set forth any "unusual circumstances" that would warrant any further extension of the deadline. Even assuming that "unusual circumstances" existed here, however, the deadline for DOJ to respond to Plaintiff's request would have been September 23, 2020. *See* 5 U.S.C. § 552(a)(6)(B)(i) (limiting any extension of a response deadline due to unusual circumstances to an additional ten business days).

31.  As of the date of this filing, Plaintiff has not received any further communications from DOJ regarding the FOIA request, nor has DOJ produced any records in response to Plaintiff's FOIA request, or indicated whether any responsive records have been found or even when a response will be forthcoming.

32.  Because DOJ has failed to comply with the time limit set forth in 5 U.S.C. § 552(a)(6)(A)(i), Plaintiff is deemed to have exhausted any and all administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(A)(C).

**FOIA Request to Defendant HUD**

33.  Defendant HUD acknowledged receiving the August 11, 2020 FOIA request on August 12, 2020. Therefore, its deadline to provide the requested records or explain why it would not do so was no later than September 10, 2020. *See* Exhibit 5.

34. HUD has not requested an extension of this deadline.

35. On August 18, 2020, Plaintiff received a letter from a Government Information Specialist in the FOIA Branch of the Office of the Executive Secretariat requesting that Plaintiff provide, with respect to requests (b) and (c) concerning certain communications with the Executive Office of the President, the names of HUD employees whose records should be included in the search. *See* Exhibit 6.

36. On August, 27, 2020, Plaintiff submitted a written response by e-mail, stating that it is HUD's responsibility to conduct a reasonable search of the records of any HUD employee who has communicated or would ordinarily communicate with the Executive Office of the President and that HUD would be best able to determine who such employees are. Plaintiff's written response also provided a non-exhaustive list of nine HUD employees who should be included in any such search. *See* Exhibit 7.

37. As of the date of this filing, Plaintiff has not received any further communications from HUD regarding the FOIA request, nor has HUD produced any records in response to Plaintiff's FOIA request, or indicated whether any responsive records have been found or even when a response will be forthcoming.

38. Because HUD has failed to comply with the time limit set forth in 5 U.S.C. § 552(a)(6)(A)(i), Plaintiff is deemed to have exhausted any and all administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(A)(C).

## VI.   CLAIM FOR RELIEF

39. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as fully set forth herein.

40. By failing to provide a determination or any documents responsive to Plaintiff's FOIA request within the statutorily mandated time period, Defendants have violated their duties under FOIA, 5 U.S.C. § 552, including but not limited to their duties to conduct a reasonable search for responsive records, to take reasonable steps to release all reasonable segregable nonexempt information, and to not withhold responsive records.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this court:

1. Order Defendants to conduct searches, by a date certain, for any and all records responsive to Plaintiff's August 11, 2020 FOIA requests and demonstrate that each of them has employed search methods reasonably likely to lead to discovery of all responsive records;

2. Order Defendants to produce, by a date certain, any and all nonexempt responsive records and a *Vaughn* index of any responsive records withheld under a claim of exemption;

3. Enjoin Defendants from withholding any and all nonexempt responsive records;

4. Award Plaintiff its attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

5. Grant Plaintiff any other relief this court deems appropriate.

                              Respectfully submitted,
                              GURBIR S. GREWAL
                              Attorney General of New Jersey

Date: October 19, 2020          By:  /**s**/ Mayur Saxena
                              MAYUR SAXENA
                                Assistant Attorney General
                              MELISSA MEDOWAY
                                Deputy Attorney General
                              JOANNA LOOMIS
                                Deputy Attorney General
                                *Admission Pending*
                              Division of Law, Newark
                              124 Halsey Street, 5th Floor
                              Newark, NJ 07101
                              (973) 648-3283
                              mayur.saxena@law.njoag.gov
                              melissa.medoway@njoag.gov
                              joanna.loomis@law.njoag.gov
                              *Attorneys for Plaintiff State of New Jersey,*
                              *Office of the Attorney General*